**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DAVID ROBERT BENTZ, #S03210, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 19-cv-00770-NJR ) |
| KRISTA ALLSUP, LASHBROOK, ELVESIZER, FRANK EVOLDIE, WILLIAM QUALLS, BRAD BRAMLET, T. BRUMLEY, T. JONES, DONAL LINDENBERG, MR. WHITE, MISS WALKER, MR. GRIFFIN, MR. HECHT, LOYD, YANKEY,[1] MR. CONWAY, MR. CHITTY, MR. MICHEALES, E. ELLIETT, JOHN HOOD, J. SPARLING, G. GUTTERSLOTH, ANDREW MARTIN, JOHN/JANE DOES, MISS MARSHAL, THOMAS LAFOND, JOHN DOE, *personal property officer,* KENT BROOKMAN, JASON HART, MR. SPILLER, PATRICIA STEWART, MR. COCKRUM, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

---

[1] The Clerk is directed to correct the docket so that Defendant "Loyd Yankey" is listed as two separate parties. (*See* Doc. 1, p. 2).

| | |
|---|---|
| **JOHN DOE #1,** | ) |
| **JOHN DOE #2,** | ) |
| **JOHN DOE #3,** | ) |
| **JOHN DOE #4,** | ) |
| **JOHN DOE #5,** | ) |
| **JOHN DOE #6,** | ) |
| **JOHN DOE #7,** | ) |
| **JOHN/JANE DOE #8,** | ) |
| **JOHN/JANE DOE #9,** | ) |
| **JOHN/JANE DOE #10,** | ) |
| **JOHN/JANE DOE #11,** | ) |
| **JOHN/JANE DOE #12,** | ) |
| **JOHN/JANE DOE #13,** | ) |
| **JOHN DOE #14,** | ) |
| **JOHN DOE #15,** | ) |
| **JOHN/JANE DOE #16,** | ) |
| **JOHN/JANE DOE #17,** | ) |
| **JOHN/JANE DOE #18,** | ) |
| **JOHN DOE #19,** | ) |
| **JOHN DOE #20,** | ) |
| **JOHN DOE #21,** | ) |
| **JOHN DOE #22,** | ) |
| **JOHN DOE #23,** | ) |
| **JOHN/JANE DOE #24,** | ) |
| **JOHN/JANE DOE #25,** | ) |
| **JOHN/JANE DOE #26,** | ) |
| **JOHN/JANE DOE #27,** | ) |
| **JOHN/JANE DOE #28,** | ) |
| **JOHN/JANE DOE #29, and** | ) |
| **JOHN/JANE DOES,** *Unidentified,* | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff David Bentz, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. Bentz claims that he was issued a false disciplinary ticket and placed in segregation for filing lawsuits against certain defendants. He seeks monetary damages and injunctive relief.

Bentz's Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriquez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Bentz makes the following allegations: On June 14, 2018, Allsup issued Bentz a false disciplinary ticket for forgery and giving false information to an employee in retaliation against Bentz for filing a lawsuit against her. (Doc. 1, p. 7). As a result, he was "deadlocked" within his cell from June 14, 2018, until June 27, 2018, and was denied showers, yard exercise, chow line movements, use of the commissary, hygene indigent kits, law library access, legal exchange, and other general population activities. (*Id.*). On June 27, 2018, he went before the Adjustment Committee. (*Id.* at p. 10). Bentz asked for (1) the recusal of Adjustment Committee Members Brookman and Hart on the basis of bias because he is suing them in another civil lawsuit; (2) the identification of the internal affairs officer mentioned in the disciplinary ticket and that such officer be called as a witness; and (3) the incident report and other documents regarding the disciplinary ticket. All of his requests were denied. (*Id.* at pp. 10, 11, 17). He was found guilty and moved to segregation. (*Id.* at p. 11).

Between June 27, 2018, and July 11, 2018, Bentz was placed in punitive segregation in unconstitutional conditions. (*Id.* at pp. 8, 9). He was housed in dirty cells without running water, cleaning supplies, writing supplies, hygiene items, ice or ice water, linens, including towels,

change of clothes, or access to laundry services, showers, or exercise time. Bentz's mattress and pillow were soiled, and he had no light switch and so the lights were off at all times. He was also exposed to excessive heat with no ventilation. (*Id.* at pp. 8, 9).

From June 14, 2018, until July 11, 2018, he was denied access to legal storage to access court documents and the law library. (*Id.* at pp. 7, 8, 9, 15). On July 14, 2018, Bentz was again denied access to his legal storage. (*Id.* at p. 11).

On January 31, 2019, the Administrative Review Board expunged Bentz's charge of giving false information to an employee. (*Id* at p. 13).

## PRELIMINARY DISMISSALS

In addition to listing twenty-nine unidentified John/Jane Doe defendants, Bentz identifies a group of defendants as "unidentified John/Jane Does," in the case caption and asserts claims against this group throughout the statement of claim. While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that a group of Menard correctional officers and staff has violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). When a plaintiff does nothing but state that a group of staff harmed him without providing more, all he has done is establish that there is a "sheer possibility" that someone in that group harmed him. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Bentz may not know the name of individual defendants, but he must make plausible allegations against individuals, describing the "who, what, why, where, and how" that form the basis of the claim against that person. *See* FED R. CIV. P. 8(a)(2). To allow otherwise

4

would be effectively allowing Bentz to amend his Complaint further at will without review of this Court, a result contrary to both the local rules and § 1915A. Accordingly, "unidentified John/Jane Does" and any claims against them are dismissed without prejudice as defendants.

Bentz also names John Doe, *personal property officer,* Lashbrook, John/Jane Doe #13, John Doe #14, and John Doe #15 in the case caption, but he does not assert any allegations against them in the "statement of facts" section. Because he has failed to associate any claims against these Defendants, they also shall be dismissed without prejudice. *See Twombly,* 550 U.S. at 555 (2007); FED. R. CIV. P. 8(a)(2).

Finally, in the statement of facts, Bentz asserts allegations against Clark, Scandland, Cleavland, John Doe #30, John Doe #31, John Doe #32, John Doe #33, John Doe #34, John Doe #35, John Doe # 36, John Doe #38, and John Doe #39, but these individuals are not listed in the case caption. The Court will not treat parties not listed in the caption as defendants, and any claims against them are considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

## DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to designate the following eleven Counts:

**Count 1:** First Amendment claim against Allsup for issuing Bentz a false disciplinary ticket and causing him to be deadlocked in his cell and placed segregation in retaliation for naming her in a lawsuit.

**Count 2:** First Amendment claim against Brookman, Hart, and Walker for finding Bentz guilty at the adjustment committee hearing in retaliation for filing lawsuits.

**Count 3:** First Amendment claim against Brumley for denying Bentz hygiene kits in July 2018 in retaliation for filing grievances and lawsuits.

5

**Count 4:** First Amendment claim against Brumley and Evoldie for denying Bentz access to his legal documents on July 14, 2018, in retaliation for filing grievances.

**Count 5:** Eighth Amendment claim of cruel and unusual punishment against Qualls, Brumley, Elvesizer, Bramlet, Yankey, Martin, John Doe #4, John Doe #5, John Doe #22, and John Doe #23 for subjecting Bentz to unconstitutional conditions of confinement while he was on deadlock in his cell from June 14, 2018, until June 27, 2018.

**Count 6:** Eighth Amendment claim of cruel and unusual punishment against Jones, White, Griffin, Hecht, Spiller, Loyd, Conway, Chitty, Micheales, Elliett, Hood, Sparling, Guttersloth, Evoldie, Lindenberg, John Doe #7, John Doe #19, John Doe #20, John Doe #21, and John/Jane Doe #29 for housing Bentz in unconstitutional conditions of confinement from June 27, 2018, until July 11, 2018, while he was in segregation.

**Count 7:** Fourteenth Amendment procedural due process claim against Allsup for filing a false disciplinary report.

**Count 8:** Fourteenth Amendment claim against John/Jane Doe #16, John/Jane Doe #17, and John/Jane Doe #18 for falsifying reports and the investigation.

**Count 9:** Fourteenth Amendment claim against Brookman, Hart, and Walker for denying Bentz due process by not recusing themselves and improper procedure during the disciplinary hearing.

**Count 10:** First Amendment claim of access to courts against Lafond, Cockrum John Doe #3, John Doe #1, John Doe #2, Qualls, Brumley, Elvesizer, Bramlet, Yankey, Martin, John Doe #4, John Doe #5, John Doe #22, John Doe #23, Lindenberg, Jones, Griffin, Elliett, Hood, John Doe #6, John Doe #7, John/Jane Doe #8, John/Jane Doe #9, John/Jane Doe #10, John/Jane Doe #11, John/Jane Doe #12, John Doe #19, John Doe #21, Stewart, John/Jane Doe #24, John/Jane Doe #25, John/Jane Doe #26, John/Jane Doe #27, John/Jane Doe #28, and Evoldie for denying Bentz access to his legal storage or the law library.

**Count 11:** Eighth Amendment claim of deliberate indifference to a serious medical need against Nurse Marshal for refusing to address Bentz's medical issues on June 27, 2018.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

## Counts 1-4

To state a claim for retaliation under the First Amendment, a plaintiff must allege that a "prison official retaliated against him for exercising a constitutionally protected right." *Pearson v. Welborn,* 471 F.3d 732, 738 (7th Cir. 2006). *See also Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012).

Bentz allegations that: (1) Allsup filed a false disciplinary ticket in retaliation for filing a previous lawsuit against her (Doc. 1, p. 7); (2) Brookman, Hart, and Walker found him guilty of the charges on the disciplinary ticket in retaliation for filing a previous lawsuit against Brookman and Hart (*Id.* at pp. 10, 11); (3) Brumley denied him hygiene items for filing lawsuits and grievances (*Id.* at p. 14); and (4) Brumley and Evoldie denied him access to legal documents in retaliation for filing grievances (*Id.* at p. 11) are enough to state a First Amendment claim against Allsup, Brookman, Hart, Walker, Brumley, and Evoldie. Therefore, Counts 1-4 survive preliminary review.

## Counts 5 and 6

Eighth Amendment protections extend to conditions of confinement that pose a substantial risk of serious harm to a prisoner's health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Not all prison conditions, however, amount to an Eighth Amendment violation. *See Jaros v. Ill. Dep't of Corr.* 684 F.3d 667, 670 (7th Cir. 2012). Only

---

[2] *Twombly,* 550 U.S. at 570 (2007).

deprivations of basic human needs like food, medical care, sanitation, and physical safety will trigger Eighth Amendment scrutiny. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981).

Bentz claims that while on "deadlock" in his cell for two weeks he was denied showers, exercise, chow line movements, commissary, hygiene kits, and other general population activities. (Doc. 1, p. 7). Although standing alone some these conditions might not support an independent claim, when considered in combination, however, the Court cannot dismiss the claim at this time and Count 5 will proceed. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Gills v. Litscher,* 468 F.3d 488, 493 (7th Cir. 2006).

Count 6 will also proceed, as Bentz claims that while in segregation he was housed in unsanitary conditions and subjected to excessive heat with no running water, showers, hygiene items, or ventilation (Doc. 1, pp. 8, 9). *See Knight,* 590 F.3d at 463 (shelter, bedding, cleaning supplies, and hygiene items are among life's necessities).

**Counts 7-9**

Standing alone, the receipt of a false disciplinary ticket does not give rise to a due process violation. This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters,* 841 F.Supp. 850, 856 (C.D.Ill.1994), *aff'd*, 70 F.3d 117 (7th Cir.1995) (citations omitted).

When a plaintiff brings an action under Section 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court reviewing a due process claim must, therefore, engage in a two part inquiry: (1) was there a

protected interest at stake that necessitated the protections demanded by due process; and (2) was the disciplinary hearing process conducted in accordance with procedural due process requirements? Due process requires that an inmate facing a disciplinary hearing is given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the resulting discipline. *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). The imposition of discipline following a hearing must also be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994); *see also Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007)

Bentz alleges that (1) Allsup filed a false disciplinary ticket; (2) John/Jane Doe #16, John/Jane Doe #17, John/Jane Doe #18 falsified reports that were turned over to the Adjustment Committee; and (3) Brookman, Hart, and Walker disregarded constitutionally required procedures while conducting the disciplinary hearing (Doc. 1, pp. 7, 10). As a result of Defendants' actions, he was placed in segregation for two weeks. Bentz's allegations regrading the conditions of his confinement while in segregation amount to an "atypical and significant hardship" that could implicate a liberty interest protected by the due process clause. *Sandin v. Conner,* 515 U.S. 472, 484 (1995); (Doc. 1, pp. 8, 9).

Bentz also claims that his due process rights were violated because he was issued a false disciplinary ticket, false reports and evidence were used during the hearing, the members of the Adjustment Committee were not impartial, he was not allowed to call an internal affairs officer as a witness, and he did not receive copies of documents relating to the hearing, such as the incident report. (Doc. 1, pp. 10-11, 17). These issues implicate a violation of the *Wolff* requirements, and, therefore, Counts 7, 8, and 9 will proceed.

**Count 10**

There is not "an abstract, freestanding right to a law library or legal assistance[.]" *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To state a claim for denial of access to the courts, a plaintiff must demonstrate that his denial of access to the library or other legal assistance "hindered his efforts to pursue a legal claim." *Id*. Mere delay or inconvenience is not an unconstitutional detriment. A plaintiff must connect the defendants' conduct with his "inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805–06 (7th Cir. 2010). This requires a plaintiff to identify the underlying claim that was lost. *See Christopher*, 536 U.S. at 416; *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Bentz claims that on several occasions he was denied access to the law library and to legal exchange in order to access his legal documents for court deadlines and that these denials frustrated and impeded his access to the courts. (Doc. 1, pp. 8, 9, 10, 11, 12, 15). He does not, however, explain "the connection between the alleged denial of access to legal materials [and the law library] and an inability to pursue a legitimate challenge." *Ortiz,* 561 F.3d at 671 (citations omitted). Because he has not alleged that the deprivations have cause him actual injury, Count 10 will be dismissed.

**Count 11**

Count 11 also will be dismissed without prejudice. Bentz's claim that Nurse Marshal refused to address his medical issues during her evaluation of him for segregation is vague and conclusory. (Doc. 1, p. 7). He does not describe the medical issues or what makes them serious

medical needs, and, therefore, has not alleged enough to show that his condition was objectively serious. *See Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir. 2000).

## MOTION FOR RECRUITMENT OF COUNSEL

Bentz has filed a Motion for Recruitment of Counsel (Doc. 10), which will be denied. Bentz discloses three unsuccessful efforts to contact attorneys via written correspondence and has included the letters from the attorneys declining representation. (*Id.* at pp. 4-6). Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se*, Bentz states that he will be unable to conduct discovery because it is difficult to correspond with Defendants as an indigent person. (*Id.* at p. 2). Nonetheless, the Court finds that Bentz can proceed *pro se*, at least for now. Not only has Bentz's Complaint survived preliminary review, but a review of the docket demonstrates an ability to construct coherent sentences and relay information to the Court. Bentz appears competent to try this matter without representation at this time. Once discovery has commenced, if he has significant difficulty, Bentz may refile his motion.

## IDENTIFICATION OF UNKNOWN DEFENDANTS AND OFFICIAL CAPACITY CLAIMS

As previously noted, Bentz will be allowed to proceed with Count 5 against John Does #4, 5, 22, and 23, Count 6 against John Does #7, 19, 20, 21, and 29, and Count 8 against John/Jane Does #16, 17, and 18. These defendants must be identified with particularity, however, before service of the Complaint can be made on them. Bentz will have the opportunity to engage in limited discovery to ascertain their identity. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Once the names of these individuals are discovered, Bentz shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint. In that vein, the warden of Menard, Frank Lawrence, will be added

as a party in this action, in his official capacity only, and shall be responsible for responding to discovery aimed at identifying these unknown defendants and implementing any potential order for injunctive relief. *See Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011).

Finally, the Court notes that Bentz asserts his claims against the remaining defendants in their official and individual capacities. Because state officials named in their official capacities may not be sued for monetary damages, *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989), and Defendant Lawrence has been added as a party in his official capacity, allowing Bentz to proceed with an official capacity claim against the other Defendants for injunctive relief would be redundant. *See Delaney v. DeTella*, 256 F.3d 679, 687 (7th Cir. 2001). Therefore, the official capacity claims against Allsup, Brookman, Hart, Walker, Brumley, Qualls, Elvesizer, Bramlet, Yankey, Martin, John Doe #4, John Doe #5, John Doe #7, John/Jane Doe #16, John/Jane Doe #17, John/Jane Doe #18, John Doe #19, John Doe #20, John Doe #21, John Doe #22, John Doe #23, John/Jane Doe #29, Jones, White, Griffin, Hecht, Spiller, Loyd, Conway, Chitty, Micheales, Elliett, Hood, Sparling, Guttersloth, Evoldie, and Lindenberg will be dismissed with prejudice.

### DISPOSITION

**IT IS ORDERED** that the Complaint survives preliminary review pursuant to 28 U.S.C. § 1915A. **COUNT 1** shall proceed against **Allsup**, **COUNT 2** shall proceed against **Brookman, Hart,** and **Walker**, **COUNT 3** shall proceed against **Brumley**, **COUNT 4** shall proceed against **Brumley** and **Evoldie**, **COUNT 5** shall proceed against **Qualls, Brumley, Elvesizer, Bramlet, Yankey, Martin, John Doe #4, John Doe #5, John Doe #22,** and **John Doe #23**, **COUNT 6** shall proceed against **Jones, White, Griffin, Hecht, Spiller, Loyd, Conway, Chitty, Micheales, Elliett, Hood, Sparling, Guttersloth, Evoldie, Lindenberg, John Doe #7, John Doe #19, John Doe #20, John Doe #21,** and **John/Jane Doe #29**, **COUNT 7** shall proceed against **Allsup**,

12

**COUNT 8** shall proceed against **John/Jane Doe #16, John/Jane Doe #17,** and **John/Jane Doe #18**, **COUNT 9** shall proceed against **Brookman, Hart,** and **Walker.**

**IT IS FURTHER ORDERED** that **COUNTS 10** and **11** are **DISMISSED without prejudice.** Because there are no other claims against them, **John/Jane Does** *C/O,* **John/Jane Does** *unidentified C/O*, **John Doe** *personal property officer,* **John Doe #1, John Doe #2, John Doe #3, John Doe #6, John/Jane Doe #8, John/Jane Doe #9, John/Jane Doe #10, John/Jane Doe #11, John/Jane Doe #12, John/Jane Doe #13, John Doe #14, John Doe #15, John/Jane Doe #24, John/Jane Doe #25, John/Jane Doe #26, John/Jane Doe #27, John/Jane Doe #28, Lafond, Cockrum, Stewart, Marshal,** and **Lashbrook** are **DISMISSED** from this action without prejudice. The Clerk of Court is **DIRECTED** to terminate them from the Case Management/Electronic Case Filing ("CM/ECF") system. The Clerk is further **DIRECTED** to change Defendants' names in accordance with footnote 1.

The Clerk of Court is **DIRECTED** to **ADD** the warden of Menard Correctional Center, **Frank Lawrence**, in his official capacity only, for the purpose of responding to discovery aimed at identifying the unknown defendants and implementing any injunctive relief that may be ordered.

**IT IS FURTHER ORDERED** that the Motion for Recruitment of Counsel (Doc. 10) is **DENIED without prejudice**.

The Clerk of Court shall prepare for **Allsup, Brookman, Hart, Walker, Brumley, Qualls, Elvesizer, Bramlet, Yankey, Martin, Jones, White, Griffin, Hecht, Spiller, Loyd, Conway, Chitty, Micheales, Elliett, Hood, Sparling, Guttersloth, Evoldie, Lindenberg,** and **Lawrence** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk of Court is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's

place of employment as identified by Bentz. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk of Court within 30 days from the date the forms were sent, the Clerk of Court shall take appropriate steps to effect formal service on that defendant, and the court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Bentz, the employer shall furnish the Clerk of Court with that defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk of Court. Address information shall not be maintained in the court file or disclosed by the Clerk of Court.

Service shall not be made on the unknown defendants, until such time as Bentz has identified each by name in a properly filed motion for substitution. Bentz is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, defendants need only respond to the issues stated in this merit review order.**

**IT IS FURTHER ORDERED** that if judgment is rendered against Bentz, and the judgment includes the payment of costs under Section 1915, Bentz will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. 28 U.S.C.§ 1915(f)(2)(A).

Finally, Bentz is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 12/30/2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**